OPINION
{¶ 1} Defendant-appellant, Jesse A. Cabrera, and plaintiff-appellee/cross-appellant, Chonita Cabrera, both appeal from a judgment of the Court of Common Pleas, Division of Domestic Relations, which found Jesse in contempt, gave Jesse the *Page 2 
opportunity to pay Chonita $25,977.28, plus $5,721.27 in attorney fees and expenses, to purge the contempt, and denied Chonita's request for an award of statutory interest.
 {¶ 2} Jesse and Chonita were married in 1968 and divorced in 1999. Important for our purposes here, the 1999 agreed judgment entry and decree of divorce included certain provisions concerning Jesse's pension fund and retirement benefits. In pertinent part, the decree provided that Chonita "shall receive one-half (1/2) of the monthly CSRS [Civil Service Retirement System] benefit which has accrued from the date of the marriage to April 19, 1996, less any credit for [Jesse's] premarital contributions to the plan and subject to a set off of one-half (1/2) of the monthly social security benefit which [Chonita] may receive." The decree also provided that Chonita "is assigned an amount equal to Forty Three and Seven Tenths Percent (43.7%) of the Marital Portion of [Jesse's] Gross Monthly Annuity determined as of his date of retirement." Finally, the decree provided the following: "If [Jesse] takes any action that prevents, decreases, or limits the collection by [Chonita] of the sums to be paid hereunder, he shall make payments to [Chonita] directly in an amount sufficient to neutralize, as to [Chonita], the effects of the actions taken by [Jesse]."
 {¶ 3} The court retained jurisdiction "to the extent required to maintain its status as a Court Order Acceptable For Processing and the original intent of the parties as stipulated herein." The decree authorized the court "to enter such further orders as are necessary to enforce the award to [Chonita] of the benefits awarded herein," including the authority to recharacterize the benefits earned under another retirement system or to make an award of alimony "in the event that [Jesse] fails to comply with the provisions contained above requiring said payments to [Chonita] by any means." *Page 3 
 {¶ 4} Jesse retired on April 3, 2003, and he began receiving his monthly retirement benefit in June 2003. On December 3, 2003, the parties filed the Court Order Acceptable for Processing ("COAP") for purposes of dividing the retirement benefits. The COAP provides, at ¶ 8:
 * * * [Chonita] shall commence her benefits as soon as administratively feasible following the date this order is approved as a [COAP], or on the date the employee commences his benefits, if later. * * * The employee agrees to arrange or to execute all forms necessary for the OPM to commence payments to the former spouse in accordance with the terms of this Order.
 {¶ 5} On June 28, 2004, Chonita filed a motion requesting that the court find Jesse in contempt for failing to forward her share of the retirement benefits. The federal government accepted the COAP on October 8, 2004. Chonita received her first monthly check on November 1, 2004. From the period of April 2003, when Jesse retired, to November 2004, when Chonita began receiving her share of Jesse's retirement benefits, Jesse paid a total of $6,053 directly to Chonita.
 {¶ 6} The trial court magistrate found Jesse in contempt and found that Jesse owed Chonita $25,977.28. The magistrate arrived at this amount by taking the total of Chonita's share of Jesse's retirement from April 2003 to November 2004 ($32,030.28) and subtracting the amount Jesse had already paid ($6,053). The magistrate sentenced Jesse to ten days in jail, but suspended the sentence on the condition that he purge his contempt by paying, on or before December 31, 2006, the full amount due to Chonita and paying her attorney fees and expenses in the amount of $5,721.27. *Page 4 
 {¶ 7} The trial court adopted the magistrate's finding of contempt and the purge order. As we noted above, the court declined to award Chonita statutory interest on her share of the retirement benefits. Both Jesse and Chonita appealed.
 {¶ 8} In his appeal, Jesse raises the following assignments of error:
 1. The Trial Court erred and abused its discretion when it found [Jesse] in contempt for failure to provide [Chonita's] share of his monthly retirement benefits from the date of [Jesse's] retirement.
 2. The Trial Court erred and abused its discretion when it awarded attorney fees to [Chonita] in the amount of $5,721.27 pursuant to R.C. 3105.73(B).
 3. The Trial Court erred and abused its discretion when it found that [Jesse] had waived a hearing upon his objections and issued its decision without a hearing.
 {¶ 9} In her cross-appeal, Chonita raises the following assignment of error: The Trial Court erred as a matter of law in failing to award statutory interest on specific post-judgment monetary awards.
 {¶ 10} We begin with Jesse's first assignment of error, in which he argues that the court erred in finding him in contempt for failing to give Chonita a share of his retirement benefits beginning on the date of retirement. In his view, because the divorce decree is silent as to the date on which Chonita's payments were to begin, the COAP controlled the date of commencement.
 {¶ 11} We will not reverse a trial court's finding of contempt absent an abuse of discretion. State ex rel. Celebrezze v. Gibbs (1991),60 Ohio St.3d 69, 75. The term "abuse of discretion" indicates more than an error of law; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 218. We find no abuse of discretion here. *Page 5 
 {¶ 12} As the trial court concluded, a COAP is an order to the retirement system effectuating the terms of the property division established in the divorce decree. A COAP cannot modify the terms of a divorce decree. See Thomas v. Thomas (Apr. 26, 2001), Franklin App. No. 00AP-541 (holding that a trial court may not change the terms of a divorce decree through a Qualified Domestic Relations Order). Here, the COAP merely directed the office of personnel management to commence payments to Chonita. It did not determine, or purport to determine, when Chonita became entitled to those payments under the divorce decree.
 {¶ 13} The decree grants Chonita a half-interest in Jesse's monthly benefit, subject to certain set-offs. The decree expressly assigns to Chonita an amount equal to 43.7 percent of the marital portion of Jesse's "Gross Monthly Annuity determined as of his date ofretirement." (Emphasis added.) Given the decree's express assignment of this interest as of Jesse's date of retirement, not the date the COAP is entered, the trial court did not abuse its discretion in finding that Jesse's retirement triggered his obligation to pay Chonita her share of the benefits.
 {¶ 14} Federal law does not change this result. The federal regulations Jesse cites define the parameters of a COAP and state that a COAP may only divide retirement benefits in a manner "expressly provided for by the court order." 5 CFR 838.1004(a). We do not disagree. Here, the divorce decree expressly assigns a benefit to Chonita as of the date of Jesse's retirement. The date on which the COAP required the office of personnel management to make payments directly to Chonita did not change that assignment. *Page 6 
 {¶ 15} Furthermore, Jesse's own actions demonstrate that he knew his retirement triggered Chonita's right to receive benefits and his obligation to make payments. Jesse made payments totaling more than $6,000 after his retirement occurred and after his spousal support obligation expired. As the trial court noted, correspondence from Jesse and his counsel expressed their belief that any payments Jesse made to Chonita before the COAP was finalized were payments toward "her share of the retirement benefits which [Jesse] receives from his employment with the United States Post Office." Plaintiff's Exhibit 10 (Aug. 15, 2003 Letter). See, also, Plaintiff's Exhibit 10 (Sept. 10, Oct. 9, and Nov. 11, 2003 Letters). This correspondence characterized the tendered checks as interim or temporary payments and acknowledged that the parties might need to correct any overpayment or underpayment. See Plaintiff's Exhibits 10, 15, and 16. And the correspondence reflects Jesse's concern for receiving credit for these interim payments toward his obligations "under the terms of the Court Order." Plaintiff's Exhibit 10 (Aug. 15, 2003 Letter).
 {¶ 16} A June 30, 2003 memorandum from Jesse's counsel to Chonita's counsel is particularly instructive for purposes of determining Jesse's intentions and understanding immediately after his retirement. The memorandum states that Jesse's counsel had spoken to Jesse, who had just received his first retirement check for about $2,300. The memo then states, in pertinent part:
 * * * This amount he has received is labeled a "temporary award" and will be sent each month until OPM calculates the correct amount of the monthly benefit. My client has been informed that the determination of the "correct amount" can take up to 4 months. *Page 7 
 In the interim my client will send a check for an amount which he has calculated as being your client's share of the monthly benefit. He will send this check to me and I am authorized to send this check to you and your client as an expression of good faith. * * *
Plaintiff's Exhibit 15 (June 30, 2003 Memorandum). On July 27, 2003, Jesse sent a check in the amount of $53 "for the months of June and July, 2003." Plaintiff's Exhibit 17 (July 27, 2003 Letter). He sent $3,000 in August, $1,000 in September, $1,000 in October, and $1,000 in November.
 {¶ 17} Jesse's express representations about the payments, his conduct from the time he retired until the COAP was filed, and his refusal to correct his substantial underpayment, all support the trial court's finding that "clear and convincing evidence was presented that Jesse violated the court's order, for which he did not have a valid defense."
 {¶ 18} Within his first assignment of error, Jesse conditionally argues that, if this court upholds the trial court's finding of contempt, then we should conclude that the trial court erred when it calculated the amount owed to Chonita. As to the calculation, Jesse raises two issues.
 {¶ 19} First, Jesse argues that the court should have taken into account the share of the costs that Chonita owes for survivor benefits. The divorce decree awards to Chonita a former spouse survivor annuity equal to her assigned portion of Jesse's pension. It also provides that the costs associated with providing this coverage shall be divided equally between Jesse and Chonita. The COAP similarly provides for Chonita's survivor benefit and confirms that the parties shall share the costs for providing this benefit equally. In his brief, Jesse gives no detail as to the costs associated with *Page 8 
providing the annuity, whether any such costs have been incurred by either party or the impact of the coverage upon Jesse or Chonita and their receipt of retirement benefits. We have no grounds on which to conclude that the trial court erred on this basis.
 {¶ 20} Second, Jesse refers to the decree's requirement that cost of living adjustments applied to Jesse's retirement benefit also must apply to Chonita's benefit, but he raises no specific error by the trial court in this respect. Jesse gives no detail as to how these adjustments could have applied to Chonita's share, when or even whether they applied to Jesse's benefit during the disputed time frame or what prejudice Jesse suffered. Again, we have no grounds on which to conclude that the trial court erred on this basis.
 {¶ 21} Finally, Jesse asserts that the trial court mischaracterized the monthly amount due to Chonita because the court referred to her portion as 43.7 percent of his benefit. The amount of the actual monthly benefit was not a disputed issue before the trial court, and the court's reference to 43.7 percent did not change the other factors involved in the final calculation. Other parts of the trial court's opinion reflect these additional factors. Both parties agree that other factors affected the final calculation and that the COAP accurately reflects the monthly benefit due. Further explanation by the trial court was unnecessary.
 {¶ 22} For all these reasons, we conclude that the trial court did not abuse its discretion in determining that Jesse was in contempt for failing to pay Chonita benefits beginning from his date of retirement or in determining the amounts Jesse owed to Chonita. Therefore, we overrule Jesse's first assignment of error. *Page 9 
 {¶ 23} In his second assignment of error, Jesse argues that the court abused its discretion in awarding Chonita attorney fees in the amount of $5,721.27. In support, Jesse argues that, because the court's contempt finding was erroneous, he should not have to pay Chonita's attorney fees. We have already determined, however, that the court's finding of contempt was not erroneous.
 {¶ 24} Jesse also asserts that Chonita's actions delayed the proceedings and ultimately delayed her receipt of monthly benefits. R.C. 3105.73(B) allows a trial court to "award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." In determining what is equitable, a court may consider "the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets." R.C. 3105.73(B).
 {¶ 25} Here, the trial court determined that the fees were reasonable in light of the complexity of the case and fees typical of an attorney with similar experience. The court also considered the clarity of the requirement that Jesse pay Chonita benefits and found Jesse's failure to make these payments "unreasonable and unjustified." Even if Chonita's actions delayed the proceedings to some extent, the court still considered appropriate factors, and the award was within the bounds of R.C. 3105.73(B). Therefore, we overrule Jesse's second assignment of error.
 {¶ 26} In his third assignment of error, Jesse argues that the trial court erred when it stated that Jesse had waived a hearing upon his objections to the magistrate's decision and issued its decision without a hearing. As Jesse acknowledges, however, Civ. R. 53(D)(4)(d) allows a trial court to rule on objections without a hearing. Because *Page 10 
the court had the authority to rule on the objections without a hearing, any reference to a waiver, whether correct or not, was harmless. The parties had briefed the issues thoroughly. The trial court's opinion reflects its full understanding of the issues and the positions of the parties. Therefore, we overrule Jesse's third assignment of error.
 {¶ 27} In her sole assignment of error, Chonita argues that the trial court erred by declining Chonita's request for statutory interest on the court's $25,977.28 award. We disagree.
 {¶ 28} The first mention of statutory interest below was Chonita's objection to the magistrate's decision. As we noted, the magistrate found Jesse in contempt and sentenced him to ten days incarceration. The magistrate's order gave Jesse the opportunity to purge the contempt by, on or before December 31, 2006, paying Chonita $25,977.28 for the unpaid retirement benefits and $5,721.27 for her attorney fees. The magistrate did not address statutory interest.
 {¶ 29} Chonita's only objection to the magistrate's decision was that the award should have included interest pursuant to R.C. 1343.03. While the objection did not specify whether Chonita was seeking pre-or post-judgment interest, the objection noted that Jesse had had control over the funds for a significant period of time.
 {¶ 30} In its decision and entry, the trial court declined to award interest. In the trial court's view, an award of interest is mandatory under R.C. 1343.03 only if the amount to be paid is calculable, due, and payable. Otherwise, the court has discretion to decide whether interest should be awarded. Here, the court found that the divorce decree did not award to Chonita a specific numeric amount as a monthly benefit. Because the amount to be paid was not calculable, due, and payable prior to the court's *Page 11 
award, an award of interest was discretionary. The court also found it unlikely that Chonita would have earned interest on the monthly benefit even if Jesse had complied timely. On these grounds, the trial court adopted the magistrate's decision finding Jesse in contempt, but allowing Jesse to purge the contempt by, on or before December 31, 2006, paying the amounts awarded for the unpaid benefits and the attorney fees.
 {¶ 31} Before this court, Chonita only raises the issue of post-judgment interest; she does not raise the issue of pre-judgment interest. Specifically, Chonita argues that R.C. 1343.03(A) mandates the award of post-judgment statutory interest, i.e., an award of interest from December 31, 2006.
 {¶ 32} R.C. 1343.03(A) provides, in pertinent part:
 * * * [W]hen money becomes due and payable * * * upon all judgment, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate per annum * * *
 {¶ 33} As the trial court recognized, an order distributing marital assets has the effect of a money judgment, and R.C. 1343.03 requires that the party receiving money under the judgment is entitled to interest on any amount due and owing. Woloch v. Foster (1994),98 Ohio App.3d 806, 812; Meeks v. Meeks, Franklin App. No. 05AP-315,2006-Ohio-642. However, R.C. 1343.03 does not require an award of interest as a matter of law as to monetary obligations that arise out of a property division where the proceeds are payable at a future date and are incalculable or uncertain. Koegel v. Koegel (1982),69 Ohio St.2d 355; Farley v. Farley (Aug. 31, 2000), Franklin App. No. 99AP-1103. *Page 12 
 {¶ 34} Applying these principles here, we conclude that there is no definite money judgment that would require an award of post-judgment interest as a matter of law. While the magistrate and the trial court calculated the amount of benefits Jesse owed to Chonita, and found that Jesse should pay Chonita's attorney fees, the court addressed payment of these amounts only within the purge order. The court's order gave Jesse the opportunity to pay the amounts due to purge the contempt. The court's order did not, however, award a money judgment to Chonita directly.
 {¶ 35} In Dunbar v. Dunbar, 68 Ohio St.3d 369, 379, 1994-Ohio-509, the Supreme Court of Ohio held that "any unpaid and delinquent [child support] installments must be reduced to a lump-sum judgment before an execution can be levied upon the monies owing." Child support arrearages that have not been reduced to a lump-sum judgment, the court held, are not subject to interest under R.C. 1343.03. Id. at syllabus. As this court explained in Harbour v. Ridgeway, Franklin App. No. 04AP-350,2005-Ohio-2643, ¶ 47, the court in Dunbar implicitly held that child support arrearages that have been reduced to a lump-sum judgment are subject to interest under R.C. 1343.03 "since they are at that point susceptible of execution and levying."
 {¶ 36} Here, the amounts the court found owing for retirement benefits and attorney fees are not susceptible of execution and levying. The express terms of the trial court's order allowed payment by December 31, 2006, to purge the contempt. Because Jesse did not make the payment, the purge order expired, leaving the court's order imposing a ten-day jail sentence in effect. At a future time, the trial court may have the opportunity to issue a money judgment in Chonita's favor and to award interest *Page 13 
on that judgment, but it has not yet done so. Therefore, we overrule Chonita's assignment of error.
 {¶ 37} In conclusion, we overrule Jesse's first, second, and third assignments of error and Chonita's sole assignment of error. Accordingly, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.
Judgment affirmed.
TYACK, J., concurs. BRYANT, J., concurs separately.